### CITY OF BATON ROUGE et al. v. BATON ROUGE WATERWORKS CO.

Circuit Court of Appeals, Fifth Circuit.
February 25, 1929.

No. 5503.

896

W. M. Barrow, C. C. Bird, and H. Payne Breazeale, all of Baton Rouge, La., for appellants.

J. Blanc Monroe and Monte M. Lemann, both of New Orleans, La., and Benj. B. Taylor, Charles Vernon Porter, Jr., Joseph A. Loret, and Laurence W. Brooks, all of Baton Rouge, La., for appellee.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from the United States District Court for the Eastern District of Louisiana from an order granting an interlocutory injunction restraining the city of Baton Rouge from interfering with the assessment and collection by appellees of a new schedule of rates, increasing its franchise rates for water furnished the city and its inhabitants. The appeal is taken under section 129 of the Judicial Code (28 USCA § 227).

The appellants rely (1) upon the existence of a contract between the city and the appellee, which fixed a schedule of rates, which appellants contend are irrevocable; and (2) that, if it be held that there are no irrevocable rates fixed by contract, the record fails to show that the contract rates are confiscatory. The jurisdiction of the District Court is assailed, but only because appellants contend that, the contract rates being irrevocable, there is no issue of confiscation in the case. If the contract rates are not to be considered as controlling, the issue of confiscation concededly confers jurisdiction upon the District Court. The appellants also contended that the motion for an interlocutory injunction was triable only before a court composed of three judges. The constitutionality of an ordinance of a municipal corporation, and not a statute of the state, being involved, section 266 of the Judicial Code (28 USCA § 380) did not apply. City of Dallas v. Dallas Telephone Co. (C. C. A.) 272 F. 410, and cases there cited.

On September 4, 1928, the appellee applied to the city to be permitted to put in effect a schedule of materially increased rates over the existing rates under the contract. On September 25, the city refused its request for increased rates on the ground that the city had a valid contract with appellee, which could not be abrogated by the city or appellee. On November 2, 1928, the appellee notified the city that it was putting in effect the increased rates, and immediately applied to the District Court for a temporary restraining order, and for an interlocutory injunction against the city from interfering with the assessment and collection of the new rates. The application for an interlocutory injunction was later heard and granted by the District Judge, and this is the order appealed from.

1. The first question upon the merits is whether the contract between the city and appellee, in its rate feature, was irrevocable as between the parties, even though the rates had become confiscatory. The appellants assert its binding force by virtue of the terms and effect of the contract itself, and also of a consent decree in a cause in the District Court of the United States for the Eastern District of Louisiana, entitled City of Baton Rouge v. John Olinger and Others (unreported).

The effect of the contract upon the rates fixed by it must be determined by the Constitution of Louisiana, as construed by its courts. On November 8, 1887, the city of Baton Rouge, by ordinance, granted to Smedley & Wood a franchise to build and operate a waterworks system to supply the city and its inhabitants with water, and authorized the use of its streets for such purpose for a period of 30 years from the date of the acceptance of the ordinance, and it provided for certain rates and prices fixed to be charged the city and its inhabitants, with a stipulated amount of free water. The ordinance was amended February 1, 1888, and, as amended, was accepted by Smedley & Wood, and the contract entered into with the city in accordance with the ordinance on April 14, 1888.

The Louisiana Constitutions of 1879 (article 235), 1898 (article 263), and 1921 (article 19, § 18) all contain a provision to the effect that "the exercise of the police power of the State shall never be abridged." In the case of City of New Orleans v. O'Keefe, 280 F. 92, this court said:

"The powers of the city of New Orleans to regulate its public utilities have but recently been the subject of elaborate investigation by the Supreme Court of Louisiana, the results of which are given in an illuminating opinion in the case of State of Louisiana v. City of New Orleans [151 La. 24] 91 So. 533, handed down on March 20, 1922. It is there held that the city of New Orleans possesses the full power of the state to regulate the local public utilities in its limits. It is further held that under the Constitution of Louisiana, which forbids an abridgment of the police power of the state, the Legislature cannot bargain away the authority to fix or contract rates for public utilities. This has been a provision of the Constitution of Louisiana since 1879. It is further held that a municipality, invested with authority to grant franchises and fix rates for local public utilities, cannot irrevocably surrender, or barter away, its police power in that respect, even for a limited term, unless, perhaps, the municipality is specifically authorized to make such irrevocable contract by the Legislature of a state whose Constitution allows it. Here, as we have seen, the Constitution forbids it."

It is clear that this court there held that the Constitution of Louisiana, as construed by the Supreme Court of Louisiana, in the case of State of Louisiana v. City of New Orleans, 151 La. 24, 91 So. 533, forbids a municipality, invested with the authority to grant franchises and fix rates for local public utilities, from irrevocably surrendering or bartering away its police power by fixing by contract irrevocable rates. Unless the Supreme Court of Louisiana has departed from the principle decided in Black v. New Orleans Ry. & Light Co., 145 La. 180, 82 So. 81, and State v. City of New Orleans, 151 La. 24, 91 So. 533, since the decision of the O'Keefe Case, the contract between the city of Baton Rouge and the appellee, so far as it attempts to fix irrevocable rates, must be held void.

It is contended that the Supreme Court of Louisiana has so departed from its former decisions in the case of Baton Rouge Waterworks Co. v. Louisiana Public Service Commission, 156 La. 539, 100 So. 710. The question involved in that case was where the rate-fixing power lay as between the Public Service Commission and the city under the Louisiana Constitution of 1921, and had no reference to the power of the city to fix irrevocable rates. It was a "controversy between two state agencies—one state-wide, the other purely local,"—as to which had the regulatory power, and this depended upon "whether the city of Baton Rouge, under its legislative charter, was vested with the authority, at the time of the adoption of the Constitution of 1921 to supervise, regulate, and control the waterworks system owned and operated by the Baton Rouge Waterworks Company, and to establish rates and charges for water supplied and sold to consumers within the city by the said company." The Supreme Court of Louisiana repeated in its opinion "that this power [to make rates] can never be abridged nor irrevocably surrendered where there is, as in this state, constitutional inhibition," and further said, "and it must be understood that we express no opinion on the right of the city to make an inviolable contract."

As the jurisprudence of Louisiana stands as it did, when the O'Keefe Case was decided by this court, we see no reason for departing from it. If the city and appellee were prohibited by the Constitution from contracting for irrevocable rates, it is clear that they could not avoid the inhibition of the Constitution by putting their agreement into the form of a consent decree. The decree in the case of City of Baton Rouge v. John Olinger et al. was not an adjudication by the court, but an embodiment of an agreement of the parties. If the Louisiana Constitution stood in the way of an agreement for irrevocable rates, it would likewise stand in the way of a compromise decree, attempting to sustain such an agreement. Kelley v. Milan, 127 U. S. 139, 8 S. Ct. 1101, 32 L. Ed. 77. That courts of last resort in states having a similar constitutional provision (notably Mississippi) have differently construed it, and that the Supreme Court of the United States has followed their construction of their own Constitutions, has no bearing on this case, in view of the construction we have held has been given it by the Supreme Court of Louisiana.

2. Without entering into a discussion of the evidence on the issue of confiscation, introduced on the hearing of the motion for an interlocutory injunction, in detail, we think the District Judge correctly ruled that it made out a prima facie case of confiscation, and of irreparable injury, for the purpose of

the preliminary motion, without prejudging that issue as it may be presented upon final hearing.

The decree of the District Court is affirmed.