MEREDITH ET AL. *v.* WINTER HAVEN ET AL.

No. 42. Argued October 22, 1943.—Decided November 8, 1943.

*Messrs. D. C. Hull* and *John L. Graham,* with whom *Messrs. Erskine W. Landis* and *J. Compton French* were on the brief, for petitioners.

*Mr. Giles J. Patterson* for respondents.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Petitioners sought a judgment granting equitable relief in the District Court below, whose jurisdiction rested solely on diversity of citizenship. The question is whether the Circuit Court of Appeals, on appeal from the judgment of the District Court, rightly declined to exercise its jurisdiction on the ground that decision of the case on the merits turned on questions of Florida constitutional and statutory law which the decisions of the Florida courts had left in a state of uncertainty.

Petitioners brought this suit in the District Court for Southern Florida, alleging by their bill of complaint that they are owners and holders of General Refunding Bonds issued in 1933 by respondent, the City of Winter Haven, Florida; that by their terms the bonds are callable by the city on any interest date on tender of their principal

amount and accrued interest, including a specified amount (depending on the date of call) of the interest payable upon the deferred-interest coupons attached to the bonds; that the city is about to call and retire the bonds without providing for payment of the deferred-interest coupons. The bill of complaint prayed a declaration that this could not lawfully be done and an injunction restraining the city from doing it.

In the event that the court should determine that the obligation of the deferred-interest coupons is unenforceable, then it was prayed that the court declare that petitioners are entitled to enforce the obligation for payment, principal and interest, of the amount of the original bonded indebtedness of the city which was refunded by the General Refunding Bonds now held by petitioners, and that the court enjoin the city and its officials, respondents here, from failing or refusing to pay the interest due on such refunded bonds, as provided by the resolution of the city commissioners authorizing the issue and sale of the General Refunding Bonds in 1933.

The District Court granted respondents' motion to dismiss the complaint on the grounds that it failed to state a cause of action and that the questions of law involved had been determined adversely to petitioners by the Supreme Court of Florida. The Court of Appeals, without passing on the merits, reversed and directed that the cause be dismissed without prejudice to petitioners' right to proceed in the state courts to secure a determination of the questions of state law involved. 134 F. 2d 202.

The Court of Appeals agreed with petitioners that the bill of complaint presented a justiciable controversy requiring determination, that they were entitled to a judgment declaring the law of Florida with respect to the validity of the deferred-interest coupons, and that if petitioners' contentions were sustained they were entitled

to a declaration in their favor and an injunction implementing the declaration. But upon an examination of the Florida decisions the court concluded that the applicable law of Florida was not clearly settled and stable, but was quite the contrary, citing *Sullivan* v. *Tampa,* 101 Fla. 298, 134 So. 211; *Columbia County Commissioners* v. *King,* 13 Fla. 451; *State ex rel. Nuveen* v. *Greer,* 88 Fla. 249, 102 So. 739; *Humphreys* v. *State ex rel. Palm Beach Co.,* 108 Fla. 92, 145 So. 858; *Alta-Cliff Co.* v. *Spurway,* 113 Fla. 633, 152 So. 731; *Lee* v. *Bond-Howell Lumber Co.,* 123 Fla. 202, 166 So. 733; and *Andrews* v. *Winter Haven,* 148 Fla. 144, 3 So. 2d 805. It expressed doubt as to what the Florida law, applicable to the facts presented, now is or will be declared to be, and in view of this uncertainty, since no federal question was presented and the jurisdiction was invoked solely on grounds of diversity of citizenship, it thought that petitioners should be required to proceed in the state courts.

Although the opinion below refers to the suit as one for a declaratory judgment, the declaration of rights prayed, as is usually the case in suits for an injunction, is an indispensable prerequisite to the award of one or the other of the forms of equitable relief which petitioners seek in the alternative. Hence, so far as we are concerned with the necessity and propriety of a determination by a federal court of questions of state law, the case does not differ from an ordinary equity suit in which, both before and since *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, federal courts have been called upon to decide state questions in order to render a judgment.

The facts as presented by the amended bill of complaint and the motion to dismiss raise two issues of state law, one and possibly both of which must be decided if petitioners are to have the benefit which they seek of the jurisdiction conferred on district courts in diversity cases. The first question arises from the fact that the Refunding Bonds of

1933 were issued without a referendum to the freehold voters of the city. Article IX, § 6 of the Florida constitution provides that municipalities "shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election," in which a majority of the freeholders of the municipality shall participate, but dispenses with this requirement in the case of "refunding" bonds. The question is whether, under the applicable decisions of the Florida courts, the provision for deferred-interest coupons could rightly be included in the obligation of the Refunding Bonds of 1933 without a referendum. If it be decided that the provision could not be included and that the coupons are invalid, the second question is whether petitioners, as holders of refunding bonds, are entitled, under § 20 of the resolution of the city commissioners authorizing the Refunding Bond issue,[1] to recover the principal and interest of an equivalent amount of the bonds refunded. This question, unlike the first, so far as appears, has not been passed upon by the Florida courts.

Several decisions of the Supreme Court of Florida have declared that where bonds to be refunded contain no provision for deferred-interest coupons, refunding bonds containing such coupons would impose "new and additional or more burdensome terms" (*Outman* v. *Cone,* 141 Fla. 196, 199, 192 So. 611, 613) which may not be included in refunding bonds unless they are approved by referendum in accordance with Article IX, § 6. *Outman* v.

---

[1] "Section 20. That if any clause, section, paragraph or provision of this resolution or of the General Refunding Bonds hereby authorized be declared unenforcible by any Court of final jurisdiction, it shall not affect or invalidate any remainder thereof, and if any of the bonds hereby authorized be adjudged illegal or unenforcible in whole or in part, the holders thereof shall be entitled to assume the position of holders of a like amount of the indebtedness hereby provided to be refunded and as such enforce their claim for payment."

*Cone, supra; Taylor* v. *Williams,* 142 Fla. 402, 195 So. 175; *Andrews* v. *Winter Haven, supra.*

As appears from the amended bill of complaint, after the present suit was begun the Supreme Court of Florida decided the case of *Andrews* v. *Winter Haven, supra.* This case involved the same issue of Refunding Bonds as is here in question. The Florida court held that the deferred-interest coupons are invalid; that the purported obligation of the invalid coupons is severable from the obligations to pay the principal of the bonds and current interest on the other coupons, which obligations are valid and enforceable; and that the bonds are subject to call upon tender of the stipulated principal and interest without including any amount purporting to be payable on the deferred-interest coupons.

It is the contention of petitioners that the *Andrews* case is not controlling because it, as well as *Outman* v. *Cone, supra,* and *Taylor* v. *Williams, supra,* which it cited and followed, is inconsistent with earlier decisions of the Supreme Court of Florida antedating the Refunding Bonds of 1933, particularly *Sullivan* v. *Tampa, supra; State* v. *Miami,* 103 Fla. 54, 137 So. 261; *State* v. *Special Tax School District,* 107 Fla. 93, 144 So. 356; *Bay County* v. *State,* 116 Fla. 656, 157 So. 1; *State* v. *Citrus County,* 116 Fla. 676, 157 So. 4; *State* v. *Sarasota County,* 118 Fla. 629, 159 So. 797. Petitioners also insist that, in deciding the *Andrews* case, the attention of the Supreme Court of Florida was not directed to the doctrine which it had earlier announced in *Columbia County Commissioners* v. *King, supra,* and in *State ex rel. Nuveen* v. *Greer, supra,* that by the law of Florida a contract is governed by the laws declared at the time the contract was made, and that consequently the court did not apply the doctrine. And finally it is said that the weight of the *Outman* and *Andrews* cases as precedents is impaired by the fact that although they appear on the record to be

adversary litigations they were not in fact vigorously contested.

While the rulings of the Supreme Court of Florida in the *Andrews* case must be taken as controlling here unless it can be said with some assurance that the Florida Supreme Court will not follow them in the future, see *Wichita Royalty Co. v. City National Bank,* 306 U. S. 103, 107; *Fidelity Trust Co. v. Field,* 311 U. S. 169, 177–178; *West v. American Telephone & Telegraph Co.,* 311 U. S. 223, 236, we assume, as the Court of Appeals has indicated, that the Supreme Court of the State may modify or even set them aside in future decisions. But we are of opinion that the difficulties of ascertaining what the state courts may hereafter determine the state law to be do not in themselves afford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought to it for decision.

The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment. *Commonwealth Trust Co. v. Bradford,* 297 U. S. 613, 618; *Risty v. Chicago, R. I. & P. Ry. Co.,* 270 U. S. 378, 387; *Kline v. Burke Construction Co.,* 260 U. S. 226, 234–235; *McClellan v. Carland,* 217 U. S. 268, 281–282. When such exceptional circumstances are not present, denial of that opportunity by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by

the highest court of the state, would thwart the purpose of the jurisdictional act.

The exceptions relate to the discretionary powers of courts of equity. An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity. *Beal* v. *Missouri Pacific R. Co.*, 312 U. S. 45, 50. Exercise of that discretion by those, as well as by other courts having equity powers, may require them to withhold their relief in furtherance of a recognized, defined public policy. *Di Giovanni* v. *Camden Insurance Assn.*, 296 U. S. 64, 73, and cases cited. It is for this reason that a federal court having jurisdiction of the cause may decline to interfere with state criminal prosecutions except when moved by most urgent considerations, *Spielman Motor Co.* v. *Dodge*, 295 U. S. 89, 95; *Beal* v. *Missouri Pacific R. Co.*, *supra*, 49–51; *Douglas* v. *Jeannette*, 319 U. S. 157; or with the collection of state taxes or with the fiscal affairs of the state, *Matthews* v. *Rodgers*, 284 U. S. 521; *Stratton* v. *St. Louis Southwestern Ry. Co.*, 284 U. S. 530; *Great Lakes Dredge & Dock Co.* v. *Huffman*, 319 U. S. 293; or with the state administrative function of prescribing the local rates of public utilities, *Central Kentucky Gas Co.* v. *Railroad Commission*, 290 U. S. 264, 271 *et seq.* and cases cited; or to interfere, by appointing a receiver, with the liquidation of an insolvent state bank by a state administrative officer, where there is no contention that the interests of creditors and stockholders will not be adequately protected, *Pennsylvania* v. *Williams*, 294 U. S. 176; *Gordon* v. *Ominsky*, 294 U. S. 186.; *Gordon* v. *Washington*, 295 U. S. 30; cf. *Kelleam* v. *Maryland Casualty Co.*, 312 U. S. 377, 381. Similarly it may refuse to appraise or shape domestic policy of the state governing its administrative agencies. *Railroad Commission* v. *Rowan & Nichols Oil Co.*, 311 U. S. 570; *Burford* v. *Sun Oil Co.*, 319 U. S. 315. And it may of course decline to ex-

ercise the equity jurisdiction conferred on it as a federal court when the plaintiff fails to establish a cause of action. *Cavanaugh* v. *Looney,* 248 U. S. 453; *Gilchrist* v. *Interborough Rapid Transit Co.,* 279 U. S. 159. So too a federal court, adhering to the salutary policy of refraining from the unnecessary decision of constitutional questions, may stay proceedings before it, to enable the parties to litigate first in the state courts questions of state law, decision of which is preliminary to, and may render unnecessary, decision of the constitutional questions presented. *Railroad Commission* v. *Pullman Co.,* 312 U. S. 496; cf. *Thompson* v. *Magnolia Petroleum Co.,* 309 U. S. 478. It is the court's duty to do so when a suit is pending in the state courts, where the state questions can be conveniently and authoritatively answered, at least where the parties to the federal court action are not strangers to the state action. *Chicago* v. *Fieldcrest Dairies,* 316 U. S. 168. In thus declining to exercise their jurisdiction to enforce rights arising under state laws, federal courts are following the same principles which traditionally have moved them, because of like considerations of policy, to refuse to give an extraordinary remedy for the protection of federal rights. *United States ex rel. Greathouse* v. *Dern,* 289 U. S. 352, 359–361; see *Virginian Ry. Co.* v. *System Federation,* 300 U. S. 515, 551–552 and cases cited; cf. *Securities & Exchange Comm'n* v. *United States Realty Co.,* 310 U. S. 434, 455 *et seq.*

But none of these considerations, nor any similar one, is present here. Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine. The decision of this case is concerned solely with the extent of the liability of the city on its Refund-

ing Bonds. Decision here does not require the federal court to determine or shape state policy governing administrative agencies. It entails no interference with such agencies or with the state courts. No litigation is pending in the state courts in which the questions here presented could be decided. We are pointed to no public policy or interest which would be served by withholding from petitioners the benefit of the jurisdiction which Congress has created with the purpose that it should be availed of and exercised subject only to such limitations as traditionally justify courts in declining to exercise the jurisdiction which they possess. To remit the parties to the state courts is to delay further the disposition of the litigation which has been pending for more than two years and which is now ready for decision. It is to penalize petitioners for resorting to a jurisdiction which they were entitled to invoke, in the absence of any special circumstances which would warrant a refusal to exercise it.

*Erie R. Co.* v. *Tompkins, supra,* did not free the federal courts from the duty of deciding questions of state law in diversity cases. Instead it placed on them a greater responsibility for determining and applying state laws in all cases within their jurisdiction in which federal law does not govern. Accepting this responsibility, as was its duty, this Court has not hesitated to decide questions of state law when necessary for the disposition of a case brought to it for decision, although the highest court of the state had not answered them, the answers were difficult, and the character of the answers which the highest state courts might ultimately give remained uncertain. *Wichita Royalty Co.* v. *City National Bank, supra; West* v. *American Telephone & Telegraph Co., supra,* 236–237; *Fidelity Trust Co.* v. *Field, supra,* 177–180; *Six Companies* v. *Joint Highway District,* 311 U. S. 180, 188; *Stoner* v. *New York Life Ins. Co.,* 311 U. S. 464; *Palmer* v. *Hoffman,* 318 U. S. 109, 116–118. Even though our de-

cisions could not finally settle the questions of state law involved, they did adjudicate the rights of the parties with the aid of such light as was afforded by the materials for decision at hand, and in accordance with the applicable principles for determining state law. In this case, as in those, it being within the jurisdiction conferred on the federal courts by Congress, we think the plaintiffs, petitioners here, were entitled to have such an adjudication.

The judgment will be reversed and the cause remanded to the Circuit Court of Appeals for further proceedings in conformity to this opinion.

*Reversed.*

MR. JUSTICE BLACK and MR. JUSTICE JACKSON are of the opinion that the judgment should be affirmed for the reasons stated in the opinion of the Circuit Court of Appeals, 134 F. 2d 202.