The Honorable Cliff FINCH, Governor of the State of Mississippi, et al., Plaintiffs-Appellants,

v.

MISSISSIPPI STATE MEDICAL ASSOCIATION, INC., et al., Defendants-Appellees.

No. 78–2138.

United States Court of Appeals, Fifth Circuit.

May 1, 1979.

George Colbin Cochran, University, Miss., Alvin M. Binder, Jackson, Miss., for plaintiffs-appellants.

William N. Reed, Peyton S. Irby, Jr., Walker W. Jones, III, L. Arnold Pyle, Jackson, Miss., for Miss. State Pharm. Assoc.

Nap L. Cassibry, II, Gulfport, Miss., for Miss. Optometric Assn.

James K. Child, Jr., J. Leray McNamara, Jackson, Miss., for Miss. Ste. Med.

John L. Maxey, II, Robert W. Sneed, Jackson, Miss., for Nurses' Adm.

Timmie Hancock, Asst. Atty. Gen., A. F. Summer, Atty. Gen., Edwin A. Snyder, R. Lloyd Arnold, Sp. Asst. Atty. Gen., Jackson, Miss., for Miss. Ste. Bd. of Dental Exam.

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A state court has now upheld the validity under the Mississippi Constitution of the statutory nomination and selection procedure for membership on the Mississippi State Board of Health. We must therefore, resolve the federal constitutional issues reserved in our initial opinion, 1978, 585 F.2d 765. There we reviewed the opinion of the district court which had dismissed the entire suit challenging this statutory procedure because "the plaintiffs had failed to show the existence of a case or controversy between persons with proper standing and defendants against whom a cause of action had been stated." 585 F.2d at 770. We affirmed the dismissal of the claims of all the plaintiffs except those of two black physicians, Drs. Gilbert R. Mason and Albert B. Britton, Jr., against the Mississippi State Medical Association. We found that the doctors alleged sufficient facts to show their standing as representatives of a class composed of black doctors who had been deprived on racial grounds of the ability to be considered for nomination by the State Medical Association to the Board of Health.

We also held that Dr. Mason, who had been appointed to the Board without being nominated by the Medical Association, had properly asserted an individual claim against the Association.

Instead of considering the claims of the doctors that the statute violated state and federal law, we temporarily abstained from reaching those questions because state law issues crucial to the decision of the case were pending in state court. We considered abstention appropriate both because resolution of these issues might avoid the decision of a federal constitutional claim and because of our respect for the independence of the state courts. 585 F.2d at 776–78. To these ends we ordered the parties to present the state law issues to the state court as rapidly as possible and to report on the state court result soon thereafter. 585 F.2d at 781.

■ In compliance with our order, the parties presented the state law issues to the Circuit Court of the First Judicial District of Hinds County, Mississippi. Special Circuit Judge Rufus Creekmore found that: (1) the term "State Medical Association" as used in Section 41–3–1 of the Mississippi Code was not ambiguous, needed no construction,[1] and was not so vague, uncertain or indefinite as to deny due process of law under the state constitution; (2) the statute did not unconstitutionally infringe upon the executive powers of the governor; and (3) the statute did not unconstitutionally delegate legislative power to a private corporation. *Mississippi ex rel. Mississippi State Medical Association v. Clark*, Miss.Cir.Ct., No. 24,113 (filed January 22, 1979). Although the decision of a state trial court might not be controlling because it is not an opinion of the highest state court, we are obliged to give it "proper regard". *Commissioner of Internal Revenue v. Bosch*, 1967, 387 U.S. 456, 464, 87 S.Ct. 1776, 1782,

18 L.Ed.2d 886, 893. We are not "convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* at 465, 87 S.Ct. at 1782, 18 L.Ed.2d at 893, *quoting West v. American Telephone & Telegraph Co.*, 1940, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 144. Any further delay would needlessly penalize the parties for invoking federal jurisdiction when there is no longer a reason for us to refuse to exercise our power. *See Meredith v. City of Winter Haven*, 1943, 320 U.S. 228, 234–35, 64 S.Ct. 7, 11, 88 L.Ed. 9, 13.

■ Thus, we must now resolve the claim that Section 41–3–1 of the Mississippi Code violates the fourteenth amendment to the federal constitution. A recent Supreme Court opinion, *Friedman v. Rogers*, 1979, —— U.S. ——, 99 S.Ct. 887, 59 L.Ed.2d 100, provides important guidance for our examination of the statute. In *Friedman*, the Court examined the Texas Optometry Act. The law, inter alia, prescribed the qualifications for membership on the Texas Optometry Board, and required that at least two-thirds of the board be members of a recognized state optometric association. Texas Rev.Civ.Stat.Ann. art. 4552–2.02. The Court unanimously held that this section of the act was constitutional because it was "reasonably related to the State's legitimate purpose of securing a Board that will administer the Act faithfully". —— U.S. at ——, 99 S.Ct. at 898, 59 L.Ed.2d at 114. Stricter scrutiny was not required because:

"When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. See *e. g., Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Unless a classification trammels fundamental personal rights or is drawn upon in-

---

1. Our previous opinion noted that "the term 'State Medical Association' must be interpreted." 585 F.2d at 778. We assume that the *state court means that the term refers to the defendant, the Mississippi State Medical Association. In its final judgment in the quo warranto suit, the court ousted the three physi-* cians from the Board of Health who had been nominated by the Mississippi Medical and Surgical Association and appointed by Governor Finch because they had not been nominated by the Mississippi State Medical Association nor confirmed by the State Senate, "all as required by Section 41–3–1."

herently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Id.* at ——, 99 S.Ct. at 898, 59 L.Ed.2d at 114 *quoting City of New Orleans v. Dukes,* 1976, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511, 516–17.

Subjected to the same test, the Mississippi statute is constitutional on its face. The statute is not drawn upon inherently suspect distinctions [2] and does not trammel fundamental rights. It is rationally related to at least one legitimate purpose, ensuring that the most expert and professionally qualified people will perform the myriad duties required of the Board of Health.[3] We are not permitted to inquire further into the wisdom or desirability of the statutory scheme. *See City of New Orleans, supra,* 427 U.S. at 303, 96 S.Ct. at 2517, 49 L.Ed.2d at 517.

Having been informed by a state court that the act is not in violation of state law, and having decided that it does not do violence to the federal constitution on its face, we now remand the case to the district court so that the plaintiffs may proceed against the Mississippi State Medical Association with their class action suit and the remaining individual claims.

REMANDED.

---

**2.** The Mississippi State Medical Association now admits black physicians to membership, although in the past it apparently was a segregated organization.

**3.** *See* Section 41–3–15 of the Mississippi Code, *quoted in* 585 F.2d at 769 n.2.